## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-cr-20019-JAR** |
| **JOSE ARAMBULA**, | |
| **Defendant.** | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION PURSUANT TO 28 U.S.C. § 2255

The United States of America, by and through Ryan A. Kriegshauser, United States Attorney for the District of Kansas, and Michelle McFarlane, Assistant United States Attorney, hereby responds to the defendant Jose Arambula's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 229.

## INTRODUCTION

The defendant asserts ineffective assistance of counsel, because his counsel allegedly (1) failed to investigate the facts of Arambula's case; (2) failed to investigate the law of Arambula's First Step Act time credit eligibility; (3) misadvised Arambula about the collateral consequences of signing the Postconviction Agreement.

The defendant's claims of ineffective assistance are affirmatively contradicted by the record or foreclosed by law. This Court should deny the motion without an evidentiary hearing for the reasons stated below.

## PROCEDURAL HISTORY

1

On May 5, 2021, Arambula and his co-defendants were charged by an Indictment. Arambula was charged with three felonies: Conspiracy to Distribute and Possess with Intent to Distribute More than 50 grams of Methamphetamine, Possession of Methamphetamine with Intent to Distribute, and Use of Telecommunication Device to Facilitate Drug Trafficking. *Indictment*, Doc. 1.  Arambula pled guilty as charged on October 30, 2023.  *Plea Petition*, Doc. 138.  There was no plea agreement.

On July 15, 2024, the Probation Office filed the Presentence Report (PSR) which calculated the defendant's sentence under the United States Sentencing Commission Guidelines Manual ("USSG" or "Guidelines").  *PSR*, Doc. 178.

The PSR determined that the defendant was responsible for 205, 714.74 kilograms of converted drug weight, resulting in a base offense level of 38 under USSG § 2D1.1.  *Id.* at ¶ 118. The PSR calculated an adjusted offense level of 45 by adding 10 levels: two levels because a firearm was possessed (USSG § 2D1.1(b)(1)); two levels because the offense involved an importation of methamphetamine (USSG § 2D1.1(b)(5); two levels because the defendant maintained a premises for the purpose of distributing controlled substances (USSG § 2D1.1(b)(12)); and four levels because the defendant was a leader/organizer (USSG § 3B1.1(a)).  *Id.* at ¶¶ 199-121, 123.  The PSR also calculated a 3-level reduction for acceptance of responsibility (USSG §3E1.1(b)).  *Id.* at ¶¶127-8.  Under Chapter 5, Part A. n. 2, the total offense level was reduced from 44 to 43.  *Id.* at ¶ 129.  With a criminal history score of I, the recommended guideline range was life.  *Id.* at ¶171.

Arambula made three objections to the PSR: 1. Objection to the firearm enhancement; 2. Objection to the maintaining a drug involved premises enhancement; 3. Objection to receiving the leader/organizer enhancement.  *Id.* at 45-8.  Prior to his Sentencing, the parties reached a

Post-Conviction Sentencing Agreement. Doc. 179. Pursuant to that agreement, the government

agreed not to pursue the two-level firearm enhancement or the two-level maintaining a premises

enhancement. *Id.* at ¶¶ 218, 221. Also pursuant to the Sentencing Agreement, the parties agreed

that a two-level, rather than a four-level enhancement for Arambula's Role in the Offense, should

apply. *Id.* at ¶224. This resulted in a guideline range of 262-327 months imprisonment. *Id.* at

¶226. The parties also agreed to recommend a sentence of 222 months imprisonment, five years

of supervised release, no fine, and the mandatory special assessment. Doc. 179 at 3. Arambula

also waived some of his appellate rights. *Id.* at 2.

Arambula was sentenced on July 24, 2024 to a sentence of 222 months (222 months on

counts 1 and 2, 48 months on count 3 to run concurrently). *Judgement*, Doc. 183. No direct

appeal followed. Arambula filed the instant motion on July 28, 2025.

## STATEMENT OF FACTS

The following facts are derived from the findings in the Presentence Investigation Report

("PSR") that the district court adopted and from the facts found by the district court at the

sentencing hearing. Doc. 178.

The Drug Enforcement Administration (DEA) and others began investigating Arambula

and his co-defendants after identifying individuals in a related case (Jesus Alvarado-Ortiz,

District of Kansas case number 21-20004). During the COVID-19 pandemic, Arambula and

Alvarado-Ortiz joined their methamphetamine distribution efforts in the Kansas City area. Court

authorized wiretap evidence showed Arambula and Alvarado-Ortiz communicated via the phone

about their drug trafficking activities.

In August 2020, the investigation focused on Arambula and his co-conspirators.

Investigators intercepted several drug related conversations with Arambula and co-defendants

throughout August and September 2020. Monitoring of these conversations led DEA to perform enforcement actions that resulted in seizures of highly pure methamphetamine from co-defendants.  In addition to the TIII wiretap evidence and seizures of methamphetamine, several cooperating individuals provided information about Arambula's drug trafficking activities. Ultimately, it was determined that Arambula was responsible for 205,714.74 kilograms of converted drug weight.

## **LEGAL STANDARDS**

A federal sentence may be collaterally attacked by a 28 U.S.C. § 2255 motion.  *See* Rules Governing Section 2255 Proceedings for the United States District Court, Rule 1.  Section 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  A claim of ineffective assistance of counsel is a cognizable claim under § 2255.  *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."  *Id.* at 688.  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally

competent assistance." *Id.* at 690.  This standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

In meeting this standard, a defendant must overcome "the general presumption that an attorney acted objectively reasonably because his decision *might* have been made for legitimate strategic reasons, which automatically applies in all cases." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).  That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  More precisely, "strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Bullock*, 297 F.3d at 1047 (alteration and quotation marks omitted).  "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (internal quotation marks omitted).

In all events, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'" *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).  That is, "a defendant must show that counsel failed to act reasonably considering all the circumstances." *United States v. Rushin*, 642 F.3d 1299, 1307 (10th Cir. 2011) (internal quotation marks omitted).  "Because possibilities without proof are endless, they are no measure of counsel's performance." *Id.*

Second, a defendant must also show that his counsel's deficient performance "actually had an adverse effect on the defense," and he must "affirmatively prove prejudice." *Strickland,* 466 U.S. at 693.  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would

5

have been different." *Id.* at 694.  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.*  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693 (internal citation omitted).  Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  In assessing prejudice in this context, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

The defendant must satisfy both prongs under *Strickland*, and his failure to satisfy either prong will result in denial of his motion.  *See United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006) ("Because [a defendant] must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." (internal citation omitted)); *Smith v. Robbins*, 528 U.S. 259, 286 (2000) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (quoting *Strickland*, 466 U.S. at 697)); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

Finally, in a habeas proceeding, the defendant has the burden to demonstrate that he is entitled to relief.  *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) ("Habeas corpus is a civil proceeding and the burden is on the petitioner to show by a preponderance of the evidence that he is entitled to relief.").  This means that the defendant has the burden to allege facts that would entitle him to relief upon proof.  *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995)

("To be entitled to an evidentiary hearing on claims raised in a habeas petition, the petitioner must allege facts which, if proved, would entitle him to relief." (internal quotations omitted)), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Further, "the allegations must be specific and particularized, not general or conclusory." *Id.*; *see also United States v. Quarterman*, 242 F.3d 392, at *2 n.3 (10th Cir. 2000) (unpublished) (noting, in considering petitioner's unsupported § 2255 claim, "Despite [Petitioner's] pro se status, this court will not sift through her brief in an attempt to construct legal arguments or theories for her, *see Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) nor consider unsupported, conclusory allegations on appeal, *see Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)."). A court need not first determine whether an attorney's performance was deficient before examining the prejudice a defendant might have suffered. *Id.* at 697, 104 S.Ct. at 2069–70. A court may dispose of a claim if there simply is a lack of sufficient prejudice. *Id.*

Under § 2255, the district court is not required to conduct an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996).

Motions filed under 28 U.S.C. § 2255 must be filed within one year "of the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The Tenth Circuit has said that "a judgment of conviction becomes final for § 2255 limitations purposes when there is no further avenue for direct appeal of any portion of the sentence" a period that did not run for Mr. Arambula until fourteen days after his sentencing hearing. *See United States v. Anthony*, 25 F.4[th] 792, 799 (10th Cir 2022). Here, Arambula's sentencing occurred on July 25, 2024 and the instant Motion was filed on July 28, 2025.

## ARGUMENT

Arambula argues that his counsel provided constitutionally ineffective assistance for a few reasons that ultimately all touch upon his counsel's alleged failure to advise Arambula about aspects of his case, including, importantly, the effect the Post Conviction Agreement would have on his eligibility to be admitted to the First Step Act. As argued below, these are entirely baseless claims, and thus the defendant fails to substantiate a basis for relief under *Strickland*.

### A.  Ground One

Under Ground One, the defendant argues that counsel "failed to investigate the facts of Arambula's case." Specifically, the defendant alleges counsel was ineffective for advising him to agree to a Postconviction Agreement and a term of imprisonment that was "grossly disproportionate" to his actual offense conduct. Doc. 229 at 51. Arambula also argues that if his counsel would have investigated his case, he would have negotiated a postconviction agreement that recommended a "materially lesser" term of imprisonment and omitted the managerial role enhancement and the importation enhancement. *Id.* For the reasons below, this claim fails under both *Strickland* prongs.

The Sixth Amendment imposes on counsel a duty to investigate. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066–67. However, the investigation need not be exhaustive because the duty to investigate includes the duty "to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691, 104 S.Ct. at 2066.

Here, it is not clear what Arambula felt should have been investigated that was not investigated. Defendant claims that counsel simply relied on information from the Government's file and did not independently investigate the case. Doc. 229 at 50. However, Arambula's counsel did push back on the Government's evidence with respect to the firearm

enhancement, the maintaining a dwelling for purposes of drug trafficking enhancement, and the leader/organizer enhancement, all of which were applied to his guideline range in his PSR. So, he did not just accept all claims made by the Government and all facts included in the PSR as true, but made specific legal and factual arguments related to three enhancements the Defendant received. After objecting to the PSR, Arambula's counsel made the strategic choice to compromise on some objections and to seek an agreement from the Government that included a lower guideline range, and an agreement from the Government to ask for a variance from the low end of Arambula's new, lower guideline range. Arambula has not met his burden to show that this strategic choice was "completely unreasonable" as is required by precedent. In securing the post-conviction agreement, Arambula's counsel was able to take a guideline range of life and facilitate an agreement wherein the Government recommended and the Court accept a 222 month sentence. It is clear from the record that Mr. Edmonds reviewed the facts of the case, completed legal research, including speaking with other, experienced attorneys, and then made strategic decisions on what to litigate and what not to litigate at Sentencing. See Attachment A at 1. Counsel then advised Arambula to into a post-conviction Agreement that contained concessions from both Arambula and the Government, and ultimately ensured that the parties recommended a sentence which was significantly lower than the sentence Arambula faced without an agreement. This strategic choice was clearly reasonable, and there are no facts contained in Arambula's Motion that indicate his attorney acted unreasonably.

With respect to the second *Strickland* prong, prejudice, Arambula has not shown that if his counsel had "investigated" further, that there would have been a different outcome. Arambula makes arguments about interpretations of the evidence in his case, but does not indicate what evidence his attorney failed to uncover that would have made any difference in his

sentencing.  Arambula's conclusory allegations of inadequate preparation do not establish deficient performance and are insufficient to warrant an evidentiary hearing. *See United States v. Kilpatrick*, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (unpublished).

Arambula argues that if his counsel would have conducted an "adequate investigation, he would have been able to negotiate a more favorable Postconviction Agreement with the government or, in the alternative, greatly mitigated Arambula's advisory guideline range."  Doc. 229 at 48.  With respect to the negotiation of a more favorable post-conviction agreement, Arambula does not show that a more favorable agreement was available or being offered to him. Arambula's counsel negotiated a very favorable post-conviction agreement that brought his sentence down from life to 222 months, and Arambula ultimately knowingly and voluntarily entered into the agreement at the time of Sentencing.  Arambula has not shown that his counsel's lack of an "adequate investigation" prejudiced him in any way.

With respect to Arambula's arguments that counsel could have made additional arguments that mitigated his sentence, Arambula's argument falls short for similar reasons. Arambula argues that his counsel should have lodged additional objections to his PSR, and if he had, his guideline range would have been 168-210 months.  Doc. 229 at 52.  Arambula further argues that his attorney could have argued about the disparity between the "ice" /actual methamphetamine base offense levels.  If he did, Arambula argues, his guideline range would have been 120-months.  Doc. 229 at 52.  He then argues that without the managerial enhancement, he would have been eligible to earn First Step Act credits, and the institutional portion of his sentence would be cut in half.  *Id.*  However, Arambula arguing that his attorney should have made more or different arguments at his sentencing does not establish prejudice.  In Arambula's case, his counsel's negotiation of a post-conviction agreement ensured the

Government would not oppose two of his objections, would compromise on the third objection, and would recommend a variance from the low end of his guideline range.  The PSR calculated Arambula's base offense level as a 38 and his total offense level as a 43,[1] ultimately recommending a life sentence.  Without the post-conviction agreement, Arambula's exposure under the guidelines was much higher and the outcome of his sentencing hearing was much less certain.  Prior to the parties entering into the Postconviction Agreement, Arambula made three objections to the PSR: Objection 1 to the two-level enhancement for possession of a weapon; Objection 2 to the two-level enhancement for maintaining a drug involved premises; and Objection 3 to the four-level enhancement for his role in the offense.  If he would have succeeded on all objections, Arambula's total offense level would have been 37, and his guideline range would have been 210-262 months.  The sentence he received, 222 months imprisonment, would have been within that guideline range.  Instead, the parties entered into a post-conviction agreement including a recommended guideline range of 262-327 months imprisonment, and as part of that range, the parties jointly recommended a significant variance from the low end of that range.  It is tough to see how his attorney's advice, i.e. that he enter into this post-conviction agreement and forgo any additional arguments at sentencing, resulted in prejudice when his sentence was so much lower than it would have been without the agreement.

Arambula's prejudice argument presupposes that his sentencing arguments would have been successful, but there vis no guarantee any of Arambula's arguments would have been successful if Arambula's counsel had pursued that argument rather than the Postconviction Agreement.  The crux of Arambula's argument appears to be that if his counsel had fought and argued on every possible point at sentencing rather than advise him to enter into the post-

---

[1] The defendant's Total Offense Level was actually calculated at a 45 but is treated as a 43 pursuant to Chapter 5, Part A (comment n.2).  *See* PSR at 31.

conviction agreement AND Arambula had won on all arguments, he would be looking at a 120-month sentence rather than the sentence he received.  Maybe that's true, but that doesn't establish a substantial likelihood of success on those arguments had they been pursued and so it does not establish prejudice under *Strickland*.  Additionally, it does not acknowledge the fact that the Government was not bound by a plea agreement and could have put on evidence to refute any points made by the Defendant, and could have argued for whatever sentence it felt was consistent with the law and supported by the evidence.  Arambula's argument also does not acknowledge the fact that the Court makes the ultimate determination on the guideline range and the sentence imposed, and Arambula has not pointed to any facts that, if true, would support the proposition that he would have received a 120-month sentence but for his attorney's alleged ineffective assistance.

Here, the evidence against Arambula was substantial.  Uncontroverted facts in the PSR established that Arambula worked with multiple individuals in the Kansas City area to distribute methamphetamine.  Doc. 178.  Arambula was intercepted by law enforcement talking and texting with co-conspirators to set up methamphetamine sales.  *Id.*  Arambula was also intercepted directing a courier, Huerta-Rodriguez, to deliver methamphetamine.  *Id.* at ¶81-84.  Arambula was also intercepted arranging methamphetamine transactions, including at his home.  *Id.* at ¶84. Arambula's drug quantity was determined to be 205,714.74 kilograms of converted drug weight, well above the quantity needed for a level 38.  *Id.* at ¶¶109, 118. The Court had all the information in the PSR to consider before imposing a sentence, and the Government would have been able to argue for a life sentence if the parties had not entered into the post-conviction agreement.  Arambula has provided no indication, apart from speculation, that there would have been a different and better outcome if he had not entered into the post-conviction agreement.

Because Arambula has the burden and has not proven either prong under *Strickland*, his argument under Ground One fails.

### B.  Ground Two

The defendant claims that his counsel was ineffective because he failed to advise Arambula the affect the Leader/Organizer Enhancement would have on his First Step Act eligibility.  Doc. 229 at 53.  Arambula goes on to argue that had his attorney investigated the "law" of Arambula's case, there is a reasonable probability that he would have negotiated a Post Conviction Agreement that omitted the Leader/Organizer enhancement that "ultimately left Arambula ineligible to earn First Step Act time credits—or, in the alternative, Arambula would have rejected the Postconviction Agreement and resisted the managerial role enhancement at Sentencing." *Id.*

Here, Arambula does not meet his burden on either of the *Strickland* prongs.  Arambula does not show that his counsel's conduct was unreasonable.  Arambula's counsel negotiated a post-conviction agreement that took his sentencing guideline range from life to a recommendation of 222 months imprisonment, which necessarily included Arambula agree to a two-level managerial enhancement.  Arambula agreed with the decision to enter into the sentencing agreement, as evidenced by his signing the agreement (Doc.179), and confirming as much for the court at his sentencing hearing.   Arambula was asked whether he agreed with each part of his post-conviction agreement and he indicated he did.  *See Sentencing Transcript,* Doc. 237 at 3-6.  Arambula now argues that his counsel should have argued against the leader/organizer enhancement entirely, rather than just compromising on a 2-level rather than a 4-level enhancement, after it turns out that he was deemed ineligible for the First Step Act.  Arambula fails to argue why the strategic decision to include a compromise on the managerial

enhancement rather than scrap the post-conviction agreement and argue this point at Sentencing was an unreasonable strategic decision to make.

In his affidavit, Mr. Edmonds explained that he made the strategic decision to advise Arambula to plead guilty without an agreement due to his anticipated guideline range. *See* Attachment A at 2.   He then made the strategic decision to seek a post-conviction sentencing agreement with an appellate wavier.  *See* Attachment A at 2.  Mr. Edmonds visited Arambula in person five times to discuss sentencing, objections, and the terms of the post-conviction agreement.  *Id.*  During those discussions, presumably Arambula would have had opportunity to discuss his concerns with the evidence and have any questions answered.  The result of those meetings and discussions is that Arambula ultimately agreed to enter into the sentencing agreement.  Mr. Edmonds also recalls discussing the First Step Act eligibility with Arambula but telling him that the Bureau of Prisons makes the ultimate determination about his eligibility.  *Id.* Arambula has not established why the advice he was given was inadequate, and/or why decisions made by his attorney to advise him to enter into a post-conviction agreement, rather than argue at Sentencing, were not reasonable given the circumstances presented in his case.

Even if Arambula could establish the first prong, he has failed to show any prejudice under *Strickland*.  Arambula's argument with respect to prejudice seems to be that if his attorney had advised him about the impact of the managerial role enhancement on his eligibility under the First Step Act, there is a "reasonable probability" that Edmonds "would have negotiated a Postconviction Agreement that omitted the managerial role enhancement that ultimately left Arambula eligible to earn First Step Act time credits" or "Arambula would have rejected the Postconviction agreement and resisted the managerial role enhancement at sentencing."  With respect to the negotiation of the post-conviction agreement, the record establishes that Mr.

Edmonds sought the post-conviction agreement as a strategic choice to put his client in the best position to receive the best sentence. Similarly as with respect to Ground One, Arambula has not shown that he was prejudiced in any way by Mr. Edmonds's advising him to enter into the post-conviction agreement. Arambula ultimately accepted the agreement. Arambula was under no obligation to accept the agreement and take Mr. Edmonds's advice. It is clear he discussed all options with his attorney over several meetings about the PSR, objections and sentencing. Arambula has not argued that accepting this agreement was not knowing and voluntary. Arambula has not established prejudice.

With respect to the argument that Arambula could have rejected the post-conviction agreement entirely, this fact, while true, likewise does not establish any prejudice. First, as argued above, Arambula has not established that he was likely to win his argument about the managerial role if he had rejected the post-conviction agreement. Additionally, even if he had rejected the agreement, he would have had to reject all of it. Arambula's PSR recommended a life sentence, and Arambula's counsel negotiated an agreed upon recommendation for 222 months. Arambula's recommended and agreed upon sentence is below the modified guideline range he and the government agreed to. *See* Doc. 178 at 48. He would have been exposed to a guideline range of life with no commitments from the Government about a recommendation. Additionally, Arambula has not shown that he would receive First Step Act credits in the way he argues he would have. Arambula argues that if he had not received the managerial role enhancement, he would have been eligible for the First Step Act and would have been eligible to receive First Step Act time credits. Doc. 229 at 53. Even if he had rejected the post-conviction agreement, fought the managerial role enhancement and the Court had not applied this enhancement, Arambula has not shown he would have received the First Step Act time credits he

argues he could have received.  He speculates, but has not shown, that he would have been accepted into the First Step Act program and would have received time off credits.  In sum, he has not shown he would be better off if he had rejected the post-conviction agreement, and his claims of prejudice are merely conclusory and speculative, the exact types of claims that should be rejected under the *Strickland* standard.  Arambula has failed to show either prong under *Strickland*, and therefore his claims under Ground Two fails.

### C.  Ground Three

The defendant claims that counsel performed ineffectively when he provided "inaccurate advice" about the collateral consequences of his conviction.  Doc. 229 at 53.  Specifically, Arambula argues counsel inaccurately advised that the terms of the Postconviction Agreement would preserve Arambula's eligibility to earn First Step Act time credits.  *Id.*  Arambula says that had he known the terms of his Postconviction Agreement would disqualify him from the First Step Act time credit eligibility, he would have "rejected the Agreement" to litigate the managerial enhancement.  *Id.* at 54.

Arambula's arguments under Ground Three fail under both *Strickland* prongs. Arambula's arguments under Ground Three are substantially similar to Ground One and Ground Two, but he does advance a few additional arguments under Ground Three.  Importantly, Arambula states without the support of a citation that counsel "performs deficiently if they provide inaccurate advice about the collateral consequences of a conviction."  Doc. 229 at 53. Here, Mr. Edmonds recalls discussing the First Step Act with Arambula and telling him that those considerations are made at the Bureau of Prisons and the Judge would not rule on that at the time of sentencing.  Attachment A at 2.  Despite knowing this decision was under the discretion of the Bureau of Prisons, Arambula still chose to enter into the agreement.   It's clear

from the record that the advice Arambula's counsel gave was designed to inform him about the

wide range of possibilities available to the Court at sentencing, and Arambula has not shown that

counsel's advice to enter into the post-conviction agreement rather than to go to sentencing

without any agreement with the government was advice that "fell below an objective standard of

reasonableness."

Additionally, similar to Ground One and Ground Two, Arambula does not establish

prejudice as to Ground Three. Arambula advances the same arguments that if he had known he

was not going to qualify for the First Step Act, he would have rejected the post-conviction

agreement, and additionally argues that he was a modest "one man" operation and there is a

"reasonable probability" that Arambula would have succeeded on his resisting of the managerial

role enhancement. Doc. 229 at 54. Under *Strickland*, Arambula must establish a "reasonable

probability" i.e. a "probability sufficient to undermine confidence in the outcome." *Strickland,*

466 U.S. at 694. "It is not enough for the defendant to show that the errors had some

conceivable effect on the outcome of the proceeding." *Id.* Here, it is not enough for Arambula

to argue that he would have simply rejected the post-conviction agreement had he received

different advice and then make a conclusory statement that he would have succeeded on his

arguments had he rejected the agreement. First, prejudice must be specific and particularized,

not conclusory, and Arambula's theory of prejudice is general and conclusory. Second, as

argued above, even if Arambula had rejected the post-conviction agreement, succeeded on

arguing the managerial role enhancement did not apply to him, he has not shown a substantial

likelihood that there would have been a different outcome. Even if he had not agreed to the

post-conviction agreement that included the two-level managerial role enhancement, he could

have received a life sentence. Even if he had gotten a sentence below 222 months and had

succeeded on his arguments with respect to the managerial role enhancement, there is no guarantee he would have been accepted into the First Step Act program and received all the benefits he now claims he missed out on because of his attorney's advice. Arambula has failed to establish he was prejudiced in any way from his attorney's advice that he accept the post-conviction agreement.  Arambula's claims under Ground Three fail as to both prongs of *Strickland*.

**<u>CONCLUSION</u>**

In sum, as to each of his claims, the defendant has failed to bear his burdens to demonstrate both deficient performance and resulting prejudice, as *Strickland* requires.  As to each claim, the defendant fails to rebut the presumption that counsel's performance was within the wide range of professionally competent assistance and fails to show that counsel performed deficiently.  Moreover, as to each claim, the defendant has failed to bear his burden to show that counsel's alleged deficient performance "actually had an adverse effect on the defense," by "affirmatively prov[ing] prejudice."  *Strickland*, 466 U.S. at 693.  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The defendant has not established a reasonable probability that the outcome of his proceedings would have been different had counsel made different strategic decisions.  Under *Strickland*'s prejudice standard, the likelihood of a different result must be substantial, not just conceivable, *Harrington*, 562 U.S. at 112, and here the likelihood of a different result is not even conceivable.  Accordingly, because the motion and the files and records of the case conclusively show that the defendant is entitled to no relief, this Court should deny him a hearing on his claims.  *See* 28 U.S.C. § 2255(b).

Respectfully submitted:

RYAN A. KRIEGSHAUSER
UNITED STATES ATTORNEY


*/s/ Michelle McFarlane*
Michelle McFarlane
Assistant United States Attorney
500 State Ave., Suite 360
Kansas City, KS  66101
Tele:   913-551-6730
Fax:    913-551-6541
Michelle.McFarlane@usdoj.gov
Ks S. Ct. No. 26824

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 22nd day of October, 2025, I electronically filed the foregoing

pleading with the Clerk of the District Court by using the CM/ECF system, which will transmit a

copy to counsel of record.

I further certify that on this date the foregoing document and the notice of electronic

filing were mailed by first-class mail to the following non-CM/ECF participants:

Jose Arambula
46054-509
SANDSTONE - FCI
Federal Correctional Institution
Inmate Mail/Parcels
PO Box 1000
Sandstone, MN 55072
PRO SE

*s/ Michelle McFarlane*
Michelle McFarlane
Assistant United States Attorney

ATTACHMENT A

AFFIDAVIT OF NORMAN ROBB EDMONDS

Comes now, Norman Robb Edmonds, being of the age of majority and under the oath states the following:

1. My name is Norman Robb Edmonds. I am an attorney dully licensed to practice law in the State of Kansas and in the United States District Court for the District of Kansas. I have been a member of the CJA panel (Congressional Justice Act) since approximately 1999.

2. I graduated from Washburn University School of Law in 1985 and I have been continuously engaged in the practice of law since that time. Upon graduating, I practiced law and served as an Officer in the Judge Advocate General's Corps of the United States Army. I then was hired to be an Assistant District Attorney in Johnson County, Kansas, a position I held from 1989 to 1992. Since 1992, I have been exclusively practicing in the area of criminal defense. I have never been found by a Court to have provided ineffective assistance to any client.

3. That on May 19, 2021, I was appointed to represent Jose Arambula in case no. 2:21-cr-20019-JAR.  Generally speaking, this case was a large scale  prosecution of methamphetamine distribution by a drug trafficking organization.

4. That in my initial consultations with Mr. Arambula, he indicated that he wished to plead guilty and take responsibility for his actions of what he did.  I did discuss with him, early in my representation, the possibility that he might choose to cooperate and try to reduce his potential sentence by virtue of cooperation agreement. He was not interested in providing cooperation and I do not recall that it was ever seriously discussed.

5. That there were a total of 15 Rounds of discovery in this case.  Further, during the pendency of the case, co-defendants offered proffer statements and became cooperating individuals.  I agreed with my client that proceeding to trial was not a viable option.

6. My review of the case was that the evidence was going to support that my client was going to be responsible for the distribution of more than 4.5 kilograms of methamphetamine, "Ice", and that we would then start any discussion of a guideline sentence with a Base Offense Level of 38. I also recognized that there were many enhancements that could be applied to my client, and that my client had significant exposure to a potential sentence of level 42 and above.

1

7. On my client's behalf, I then began discussions with the assigned Assistant United States Attorney, Michelle McFarlane. The results of the negotiations was an offer to plead to the conspiracy count and agree to the low end of the guidelines. This negotiation would allow for our ability to object to anything within the PSR but would also involve an Appellate Waiver.

8. My assessment of the case of the case was that my client was likely to score above a level 42 and thus, agreeing to the low end of the guideline was a meaningless offer. I consulted with different colleagues (other persons on the CJA panel as well as at least one person from the public defender's office) to discuss my analysis of the case and potential sentence, and the possibility of pleading "open," *i.e.* without a plea agreement and thus not being obligated to the Appellate Waiver. Those conversations resulted in a concurrence that my analysis and strategy was correct and that the plea agreement was not providing any real and meaningful benefit to my client.   In this way, I was hopeful the having not tendered a waiver of appellate rights might later prove to have value as a way to negotiate a Post-Plea Agreement.

9. I presented the proposed Plea Agreement to Mr. Arambula, as well as the potential to plead without a plea agreement.   Ultimately, Mr. Arambula agreed to plead his case without a plea agreement, which was consistent with my advice.

10. In preparation for sentencing, I reviewed the draft of the PSR thoroughly with my client and thereafter drafted substantive objections to multiple components (sentencing enhancements) of the PSR. Those objections, along with continuing discussions with the prosecution about the equities of this case,  resulted in a successful Post Plea Agreement,  taking the potential sentence from Life down to 222 months. In that regard, the case, to its conclusion, proceeded consistent  my strategy of keeping the Appellate Waiver open and available  as a point of negotiation.

11. My records show that between the time of the plea and the time of sentencing I conducted five (5) in person visits at Leavenworth USP with Mr. Arambula to discuss sentencing, my objections, and the terms of the Post-Conviction Agreement.

12. During the course of these meetings, I do recall that Mr. Arambula asked me about his eligibility for aspects of the First Step Act. I can recall that I told him that First Step Act considerations were made by the United States Bureau of Prisons and was not something the Judge was ruling on at the time of sentencing.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of October, 2025.

2

VERIFICATION

State of Kansas        )
                       ) SS.
County of Johnson  )

I have read the above  and to the best of my knowledge believe that the information is accurate and complete.

_____
Norman Robb Edmonds

Subscribed and sworn this 22nd day of October, 2025.

_____
Notary Public

My commission expires _____

ALLISON L. BATH
Notary Public, State of Kansas
My Appointment Expires
10 22 28

3