## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

JOSE ARAMBULA,

     Defendant.

Case No. 2:21-CR-20019-JAR-1

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jose Arambula's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 229). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court denies Petitioner's § 2255 motion without an evidentiary hearing.

## I.    Background

On May 5, 2021, a grand jury returned an Indictment charging Petitioner and several codefendants with drug-trafficking offenses.[1] Petitioner was charged with conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine, possession of methamphetamine with intent to distribute, and use of a telecommunication device to facilitate drug trafficking. On October 30, 2023, Petitioner pleaded guilty to all three counts charged in the Indictment, without a plea agreement.[2]

The United States Probation Office thereafter prepared a Presentence Investigation Report ("PSR").[3] The PSR attributed 205,714.74 kilograms of converted drug weight to

---

[1] Doc. 1.

[2] Docs. 137, 138.

[3] Doc. 178.

Petitioner, resulting in a base offense level of 38.  It then applied four enhancements: a two-level enhancement for possession of a firearm,[4] a two-level enhancement because the offense involved the importation of methamphetamine,[5] a two-level enhancement for maintaining a drug-involved premises,[6] and a four-level aggravating-role enhancement.[7]  The PSR also applied a three-level reduction for acceptance of responsibility.[8]  As a result, the PSR calculated a total offense level of 45, which was treated as level 43.[9]  With a criminal history category of I, the PSR produced an advisory guideline recommendation of life imprisonment.  Petitioner objected to three of the offense-level enhancements: the firearm enhancement, the maintaining-a-drug-involved premises enhancement, and the aggravating-role enhancement.

Before sentencing, Petitioner and the Government entered into a postconviction sentencing agreement.[10]  Under that agreement, the Government agreed not to pursue the firearm enhancement or the maintaining-a-drug-involved premises enhancement, and the parties agreed that a two-level, rather than a four-level, aggravating-role enhancement would apply.  The agreement produced an advisory guideline range of 262 to 327 months, and the parties jointly recommended that the Court sentence Petitioner to 222 months' imprisonment.  On July 24,

---

[4] U.S.S.G. § 2D1.1(b)(1).

[5] U.S.S.G. § 2D1.1(b)(5).

[6] U.S.S.G. § 2D1.1(b)(12).

[7] U.S.S.G. § 3B1.1(a).

[8] U.S.S.G. § 3E1.1(a), (b).

[9] U.S. Sent'g Guidelines Manual ch. 5, pt. A cmt. n.2 (U.S. Sent'g Comm'n 2023) ("An offense level of more than 43 is to be treated as an offense level of 43.").

[10] Doc. 179.

2024, the Court imposed the jointly-recommended 222-month sentence.[11]  Petitioner did not file a direct appeal.  On July 28, 2025, Petitioner filed the present motion under 28 U.S.C. § 2255.[12]

## II.    Legal Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[13] The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[14]  A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[15]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[16]

Because Petitioner appears *pro se*, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[17]  If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[18]  It is not, however, "the proper

---

[11] Doc. 183.

[12] Doc. 229.

[13] 28 U.S.C. § 2255(b).

[14] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[15] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[16] *United States v. Sanchez*, 105 F.3d 670, 1997 WL 8842, at *3 (10th Cir. Jan. 10, 1997) ("[D]efendant's conclusory allegations regarding the plea agreement terms, which contradict the record made at the plea hearing, were insufficient to require an evidentiary hearing.").

[17] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[18] *Id.*

function of the district court to assume the role of advocate for the pro se litigant."[19]  For that reason, the Court shall not supply additional factual allegations to round out Petitioner's claims or construct a legal theory on his behalf.[20]

## III.    Discussion

Petitioner moves under 28 U.S.C. § 2255 on the ground that he was denied effective assistance of counsel at sentencing.  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[21]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[22]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[23]  This standard is "highly demanding."[24]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[25]  Judicial scrutiny of the adequacy of attorney performance is strongly deferential: "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[26]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the

---

[19] *Id.*

[20] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[21] 466 U.S. 668 (1984).

[22] *Id.* at 688.

[23] *Id.* at 690.

[24] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[25] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (alteration in original) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).

[26] *Strickland*, 466 U.S. at 689.

time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[27]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[28]  To prevail on this prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[29]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[30]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[31]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[32]  "The performance component need not be addressed first.  'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[33]

Petitioner asserts that his attorney, Norman Robb Edmonds, rendered ineffective assistance on three grounds: (1) by failing to investigate the facts of his case and the factual basis for the guideline enhancements reflected in the PSR; (2) by failing to investigate the law governing Petitioner's eligibility for First Step Act time credits before advising him to enter into the postconviction sentencing agreement; and (3) by misadvising Petitioner that the agreement

---

[27] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[28] *Strickland*, 466 U.S. at 687.

[29] *Id.* at 694.

[30] *Id.*

[31] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[32] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[33] *Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

would preserve his eligibility to earn those credits.  The Court addresses each ground in turn.  As discussed below, Petitioner fails to establish prejudice under *Strickland* on any ground, and the Court therefore does not reach the issue of deficient performance.

### A.  Ground One – Failure to Investigate Factual Basis for Guideline Enhancements

Petitioner first contends that Mr. Edmonds rendered ineffective assistance at sentencing by failing to investigate the facts of his case and by accepting the PSR's account of his role "at face value."[34]  Petitioner alleges that Mr. Edmonds never hired a private investigator or otherwise conducted an adequate independent factual investigation, which in turn prevented Mr. Edmonds from uncovering what Petitioner characterizes as "significant errors" in the PSR's description of his offense conduct.[35]  According to Petitioner, that failure led Mr. Edmonds to offer only limited objections to the PSR and to advise Petitioner to enter into a postconviction sentencing agreement that included importation and managerial-role enhancements, which Petitioner contends lacked a factual basis and also rendered him ineligible to earn First Step Act time credits.  Petitioner argues that, had Mr. Edmonds adequately investigated the facts, there is a reasonable probability that Mr. Edmonds would have negotiated a materially more favorable agreement or contested those enhancements at sentencing, resulting in a substantially lower sentence and preserving his eligibility for First Step Act time credits.

These allegations, however, do not establish prejudice.  To satisfy the prejudice prong of the *Strickland* test in the context of an alleged failure to investigate, "a defendant must specifically show what beneficial evidence an 'adequate' investigation would have produced."[36]  Here, Petitioner does not identify the witnesses Mr. Edmonds should have interviewed, explain

---

[34] Doc. 229 ¶ 200.

[35] *Id.* ¶ 202.

[36] *United States v. Manriquez-Rodriguez*, 182 F.3d 934, 1999 WL 345505, at *5 (10th Cir. June 1, 1999).

what evidence Mr. Edmonds failed to uncover, or offer any substance as to what a private investigator would have revealed and how it would have produced a more favorable result. Instead, he argues only in general terms that a fuller investigation would have resulted in a more favorable agreement or a lower sentence after contested sentencing proceedings. But "[s]imply speculating that investigation might have resulted in something useful will not suffice."[37] As such, Petitioner has not shown a reasonable probability that, but for Mr. Edmonds's alleged failure to investigate, the result of the proceeding would have been different. Therefore, Ground One fails.

### B.  Ground Two – Failure to Investigate First Step Act Time-Credit Eligibility

Petitioner next argues that Mr. Edmonds rendered ineffective assistance by failing to investigate the law governing his eligibility for First Step Act time credits before advising him to enter into the postconviction sentencing agreement. Specifically, Petitioner alleges that Mr. Edmonds advised him that the terms of the agreement would preserve his eligibility to earn First Step Act time credits, when in fact the agreement's managerial-role enhancement rendered him ineligible for those credits.[38] Petitioner argues that, had Mr. Edmonds properly investigated the law, there is a reasonable probability that Mr. Edmonds would have negotiated a postconviction agreement that omitted the managerial-role enhancement or, alternatively, that Petitioner would have rejected the agreement and resisted that enhancement at sentencing.

However, Petitioner's theory fails for three reasons. First, Petitioner offers no basis to conclude that a more favorable agreement was actually available. The postconviction agreement

---

[37] *Id.*

[38] 18 U.S.C. § 3632(d)(4)(D)(lxvii) (disqualifying prisoners serving sentences for possession of methamphetamine with intent to distribute from earning First Step Act time credits when the sentencing court found that they acted as an organizer, leader, manager, or supervisor in the offense).

already provided substantial concessions.  Before the agreement, the PSR calculated a base offense level of 38, applied enhancements for possession of a firearm, importation, maintaining-a-drug-involved premises, and a four-level aggravating-role enhancement, and yielded a guideline recommendation of life imprisonment.  Under the agreement, by contrast, the Government agreed not to pursue the firearm enhancement or the maintaining a drug-involved premises enhancement and agreed to reduce the role enhancement from four levels to two, resulting in an advisory guideline range of 262 to 327 months.  The parties then jointly recommended a variance to 222 months, substantially lower than the revised advisory guideline range, and the Court imposed that sentence.  Given that substantial reduction from a recommended life sentence to a sentence well below the adjusted guideline range, Petitioner has not shown—beyond mere speculation—that the Government would also have agreed to omit the managerial-role enhancement altogether while leaving the remainder of the agreement intact.

Second, Petitioner has not shown a reasonable probability that he would have obtained a better result by rejecting the agreement and litigating the managerial-role enhancement at sentencing.  Rejecting the agreement would have meant rejecting it in its entirety.  Petitioner therefore would have faced sentencing under a PSR recommending life imprisonment, without the Government's agreement not to pursue the firearm and premises enhancements and without the Government's agreement to reduce the role enhancement from four levels to two.  His theory thus depends not only on his ability to challenge the managerial-role enhancement successfully, but also on his ability to obtain a more favorable overall outcome after giving up the substantial concessions already secured in the agreement.  Petitioner has not made that showing.  He offers no non-speculative basis to conclude that, after forfeiting those concessions and facing the PSR's

recommended life sentence, he would have received a sentence more favorable than the 222-month sentence the Court ultimately imposed.

Even so, when the analysis is narrowed to the managerial-role enhancement, Petitioner has not shown a reasonable probability that he would have defeated it.  Petitioner alleges that he was not a manager or organizer at all, but merely a low-level broker who connected a Kansas City stash house with buyers he met at casinos.  He contends that Jose Huerta-Rodriguez—an individual who investigators identified as one of the couriers making methamphetamine deliveries tied to Petitioner's trafficking activity—was not acting under his direction.  He further argues that investigators overstated his role by conflating his conduct with that of Jesus Alvarado-Ortiz, who led the methamphetamine trafficking organization at the center of this case, and that some evidence may also have been confused because both Petitioner and another trafficker were associated with the nickname "Gordo."

But these assertions do not establish a reasonable probability that the Court would have rejected the enhancement had the issue been litigated.  As the Government points out in its response, it could have presented evidence supporting the managerial-role enhancement at the sentencing hearing, which it would have needed to prove only by a preponderance of the evidence.[39]  And the facts set out in the PSR reflect that the Government had substantial evidence available to do so, including intercepted communications between Petitioner and Alvarado-Ortiz concerning shipments and money transfers; investigators' determination that Petitioner had been brought into Alvarado-Ortiz's trafficking operation as a financial backer and

---

[39] *United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009) ("The government bears the burden of proving sentencing enhancements by a preponderance of the evidence.").

partner; evidence that Petitioner coordinated kilogram-level transactions; and evidence that Huerta-Rodriguez delivered methamphetamine on Petitioner's behalf.

The PSR also recounts that Huerta-Rodriguez told investigators that he had been sent from Mexico to Kansas City to work for Petitioner, that Petitioner provided the phone he used, instructed him on deliveries, paid his rent and utilities, and directed him to deliver methamphetamine and collect money.  In addition, the PSR describes other transactions and witness information tying Petitioner to coordinated deliveries through couriers, stash locations, and multi-kilogram deals.  Thus, the Government could have put on evidence to establish the managerial-role enhancement by a preponderance of the evidence.  Petitioner has not shown a reasonable probability that, had the Government presented that evidence, the Court would have rejected the enhancement.

Third and finally, even if Petitioner could establish a reasonable probability that he would have avoided the managerial-role enhancement, he still has not shown a reasonable probability that he actually would have received First Step Act time credits.  To earn time credits under the First Step Act, a prisoner must first complete at least "30 days of successful participation in evidence-based recidivism reduction programming or productive activities."[40]  Petitioner offers no basis to conclude that he in fact would have completed the required programming and earned those credits.  Thus, this part of his prejudice theory is "entirely speculative."[41]  For these reasons, Ground Two fails.

---

[40] 18 U.S.C. § 3632(d)(4)(A)(i).

[41] *Washington v. United States*, No. 3:20-CR-187, 2023 WL 7109830, at *4 (D.N.D. Oct. 27, 2023) (rejecting ineffective-assistance claim based on alleged loss of First Step Act time credits because any reduction was "entirely speculative," given that it was contingent on the defendant's future successful completion of qualifying programming).

### C.  Ground Three – Misadvice Regarding First Step Act Time-Credit Eligibility

Lastly, Petitioner argues that Mr. Edmonds rendered ineffective assistance by misadvising him about the effect of the postconviction sentencing agreement on his eligibility for First Step Act time credits.  Petitioner contends that, had he known the agreement would not preserve that eligibility, he would have rejected the agreement and litigated the managerial-role enhancement at sentencing, and that there is a reasonable probability he would have "successfully resisted" that enhancement because he was merely a modest "one man" operation.[42]

For substantially the same reasons discussed in Ground Two, Petitioner has not established prejudice.  Petitioner has not shown a reasonable probability that he would have defeated the managerial-role enhancement had he rejected the agreement and litigated that issue at sentencing.  As discussed above, the Government could have presented evidence supporting the managerial-role enhancement, and Petitioner has not shown a reasonable probability that the Court would have rejected it.  Nor has Petitioner shown a reasonable probability that he actually would have earned First Step Act time credits even if he had avoided the enhancement.  Accordingly, Petitioner has not shown a reasonable probability that, but for Mr. Edmonds's alleged misadvice, the result of the proceeding would have been different.  Thus, Ground Three fails.

In conclusion, Petitioner has failed to establish prejudice on any of his three ineffective-assistance claims.  Because "the motion and the files and records of the case conclusively show

---

[42] Doc. 229 ¶ 221.

that the prisoner is entitled to no relief," an evidentiary hearing is not required.[43]  Accordingly, Petitioner's motion under 28 U.S.C. § 2255 is denied.

### D.  Certificate of Appealability

Rule 11 of the Rules Governing § 2255 proceedings directs the Court to issue or deny a certificate of appealability upon issuing a final adverse order.  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."[44]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[45]  For the reasons stated above, the Court finds that Petitioner has not made this showing and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Jose Arambula's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 229) is **denied** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: April 29, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[43] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[44] 28 U.S.C. § 2253(c)(2).

[45] *Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).